IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Nos. 10-233, 19-8 |
| | ) | |
| RICHARD JASEK | ) | |

**UNITED STATES SENTENCING MEMORANDUM**

**I.  INTRODUCTION**

It is not uncommon for a defendant to state at sentencing that a particular prosecution was a "wake-up call" or "an eye opener." After a defendant commits crime after crime for years despite prior incarceration, however, there is no longer a need for a wake-up call or an eye opener. Such defendants are not sleeping and their eyes are wide open. They did what they chose to do with knowledge of the consequences.

The defendant, Richard Jasek, is one such defendant. He got caught doing what he chose to do while knowing the consequences for doing it. In 2017 and 2018, he conspired to distribute kilograms of cocaine as well as significant quantities of heroin while he was on federal supervised release from a prior federal prison sentence for conspiring to distribute at least a half kilo of cocaine. These federal drug trafficking convictions were preceded by state felony convictions involving domestic violence, gun violence, and fleeing from police.

Mr. Jasek is pending sentencing at Crim. No. 19-8 for conspiring in 2017 and 2018 to distribute at least 500 grams of cocaine and at least 100 grams of heroin. The parties have agreed to sentencing guideline quantity stipulations of 3 kilograms of cocaine and 100 grams of heroin. Mr. Jasek is also pending supervised release revocation at Crim. No. 10-233 for committing his

1

2017/2018 drug trafficking crime while on supervised release as well as for additional release violations.

Several of the defendants sentenced so far at Crim. No. 19-8 were not core members and sources of supply for the drug trafficking conspiracy charged in Count 1 of the Superseding Indictment. Mr. Jasek was a core member of the conspiracy who served as a source of supply for cocaine and heroin. For his dangerous and recidivist criminal choices, and to avoid unjustified sentencing disparities, Mr. Jasek should be sentenced at Crim. No. 19-8 to at least 70 months in prison. The sentencing guidelines call for a sentence of between 70 and 87 months in prison (above the statutory minimum sentence of 60 months).

Mr. Jasek should also receive a consecutive sentence at Crim. No. 10-233 of at least 24 months in prison for his supervised release violations. The sentencing guidelines call for a sentence of between 24 and 30 months, consecutive to the sentence imposed at Crim. No. 19-8. U.S.S.G. §§ 7B1.3(f). A sentence of at least 94 months in prison, followed by at least 4 years of supervised release, is fully justified by the large-scale cocaine and heroin trafficking crime Mr. Jasek committed while he was on supervised release following his prior 72-month prison sentence for prior cocaine trafficking.[1]

---

[1] In Document 2995, Mr. Jasek made several objections to the Pre-sentence Report. As noted in the Addendum to the PSR, none of the objections impacts the applicable sentencing guideline range. The Addendum effectively addresses the objections, including by emphasizing that Mr. Jasek did not previously object to the factual summaries of his prior convictions that were included in his prior PSR. By not previously objecting to those factual summaries, he admitted them. *United States v. Siegel*, 477 F.3d 87, 93–94 (3d Cir. 2007) ("[B]y not objecting to the PSR's factual allegations, the defendant has admitted them.") (citing and quoting *United States v. Cullen,* 432 F.3d 903, 905 (8th Cir. 2006)); *United States v. Mata*, 2020 WL 6580768, at *2 n.4 (D.N.J. 2020) (unpublished) ("Defendant vehemently denies involvement in a murder plot as described in his Presentence Report . . . . This Court will not entertain any argument as to the veracity of contents in Defendant's PSR because no objections were raised at the time of Defendant's sentence or on appeal.").

## II.  NO MEANINGFUL MITIGATION

Mr. Jasek's adult choices over the last nearly 20 years do not support any kind of mitigated sentence.  Our society has the right to engage in self-defense against drug dealers who refuse to stop dealing drugs.  Incarceration is societal self-defense against those who, like Mr. Jasek, refuse to stop committing crimes, particularly drug dealing crimes.  It is one of civil society's earliest and most fundamental forms of social distancing.

Moreover, the scope of Mr. Jasek's drug-trafficking contradicts any claim that he has been trafficking drugs to support his habit or his family.  Even if such a claim was true, it would not support a mitigated sentence in this case.  There is absolutely no excuse for distributing substances that corrupt or kill people and leave their families in misery.  Even if the perpetually contradicted claims of "I was just dealing to support my family" or "I was just dealing to support my habit" were true, they would not come close to incrementally excusing such crimes.  It is not acceptable to jeopardize the lives of others and risk placing other families in misery to supposedly support your habit or your family.

Any attempt to mitigate Mr. Jasek's drug trafficking by claiming that his crimes have been non-violent would not actually mitigate those crimes.  All drug dealing is dangerous and threatens to corrupt or kill people and destroy families regardless of whether it is carried out with a friendly grin or a gun.  It is illogical to treat non-violence as a mitigating factor when it comes to the distribution of substances that corrupt or kill people.  The presence of violence can make drug dealing worse, but the absence of violence does not make drug dealing any better – just like the absence of violence in the commission of environmental pollution crimes would not make them any better.  Drug dealing is, at its core, pollution for profit.  It should not make anyone feel better

3

that the majority of the thousands of our fellow citizens who are killed each year by drug dealing die from "non-violent" drug dealing.

### III.  OFFENSE CONDUCT

From 2017 to 2019, the DEA and the IRS conducted an investigation into a drug-trafficking conspiracy that operated throughout the United States.  It was led by Noah Landfried and several of his associates.  The conspiracy was based in Western Pennsylvania where Landfried resided.  Two of the controlled substances distributed by members of the conspiracy were cocaine and heroin.

As noted above, Mr. Jasek was on federal supervised release in Western Pennsylvania in 2017 and 2018.  During that time, Landfried and Mr. Jasek worked together to distribute kilogram quantities of cocaine, as well as significant quantities of heroin, in Allegheny County.  Landfried and Mr. Jasek served as sources of supply for each other as well as for others.  They would, at least on occasion, provide the controlled substances to each other on credit based on the agreement that payment would occur following re-distribution of the substances.  Mr. Jasek is responsible for the distribution of 3 kilograms of cocaine and 100 grams of heroin as part of the conspiracy charged in Count 1 of the Superseding Indictment.

### IV.  CRIME AFTER CRIMES

In 2012, Mr. Jasek was sentenced to 72 months in federal prison for conspiring to distribute at least 500 grams of cocaine.  Prior to that federal conviction, he had been convicted in state court of committing several felony crimes as an adult, including crimes involving domestic violence, gun violence, and fleeing from police.  He was convicted in 2004 of assaulting his ex-girlfriend. The victim reported that he unlawfully entered her house and punched her in the head while in possession of a gun.  The victim told police that Mr. Jasek had physically abused her in the past as

well.

In 2005, Mr. Jasek was convicted of making terroristic threats, simple assault, and recklessly endangering after he participated in a violent group assault on a male victim, apparently as a result of a belief that the victim had cooperated with law enforcement. It was reported that Mr. Jasek brandished a gun during the assault. He committed these crimes while on probation for the domestic violence assault conviction detailed in the prior paragraph.

While Mr. Jasek was on probation for the domestic violence assault conviction, and on bond for the other violent assault detailed in the prior paragraph, he fled in a vehicle from pursuing police officers. He was thereafter apprehended. He was subsequently convicted of fleeing from/attempting to elude a police officer.

As noted above, in 2012 Mr. Jasek was sentenced to 72 months in federal prison for conspiring to distribute at least 500 grams of cocaine. He was released to supervised release in 2015. As detailed in the two pending supervised release violation petitions, he repeatedly violated his release conditions thereafter. Not only did he conspire to distribute large quantities of cocaine and heroin while on supervised release, he also committed other fundamental release violations. One such violation was residing at an unapproved location. That is, Mr. Jasek resided at a location on Maryland Avenue in Duquesne without informing, and obtaining the approval of, his probation officer.

## V. CONCLUSION

While there are far too many drug dealers, there are not that many. The great majority of our fellow citizens go to great lengths to keep themselves and their children away from the terrible effects of drug dealing and would never deal drugs regardless of their circumstances. The fact that

Mr. Jasek has been one of far too many drug dealers does not justify a reduced sentence in this case:

> Intractability often suggests inevitability. So it is with illegal drugs. We seem resigned to the matter as to some low-grade national fever which we may never wholly shake. Viewed in macro terms, that may be true. Viewed in broad societal terms, we may not be able to make much of a dent in the "drug problem." And yet viewed through the lens of a wrecked and shattered life, drugs are not an abstract "problem," but an all too concrete tragedy. Our court system, while hardly the whole answer, still brings to justice those who strip the lives of others of hope and potential and leave them to the toils of addiction.

*United States v. Gray*, 491 F.3d 138, 157 (4th Cir. 2007).

As requested above, Mr. Jasek should receive a combined guideline-range sentence of at least 94 months in prison for his 2017/2018 drug trafficking and for blatantly refusing to honor the release conditions that were previously imposed at Crim. No. 10-233.  Research conducted by the United States Sentencing Commission supports the conclusion that longer prison sentences not only prevent more crimes prior to release, they deter more crimes after release. United States Sentencing Commission, "*Length of Incarceration and Recidivism*," p. 4 (published April 2020) (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf).

The Sentencing Commission research "consistently found that incarceration lengths of more than 120 months had a deterrent effect." *Id*.  Defendants incarcerated for more than 120 months are between 30 and 45 percent less likely to recidivate within 8 years of release. *Id*. Defendants incarcerated for more than 60 months were more likely to recidivate than defendants who received sentences of more than 120 months, but they were still 17 percent less likely to recidivate than defendants who received shorter sentences. *Id*.

Mr. Jasek had to have been fully aware that continuing to deal drugs would result in sentencing consequences similar to those he is now facing.  He chose to do it anyway.  He did not

have to commit that crime or any of the other crimes he committed in the past. He should be held accountable for contributing to the decline of our families and communities by continuing his heroin and cocaine crime spree despite all of his prior convictions and incarceration.

                Respectfully submitted,

                STEPHEN R. KAUFMAN
                Acting United States Attorney

                s/ Craig W. Haller
                CRAIG W. HALLER
                Assistant U.S. Attorney
                700 Grant Street, Suite 4000
                Pittsburgh, PA 15219
                (412) 644-3500 (Phone)
                craig.haller@usdoj.gov
                PA ID No. 87714